

IN THE
TENTH COURT OF APPEALS

No. 10-12-00432-CR

FRED NATHAN,

                                          Appellant

 v.

THE STATE OF TEXAS,

                                          Appellee

From the 13th District Court
Navarro County, Texas
Trial Court No. 33696-CR

MEMORANDUM  OPINION

In one issue, appellant, Fred Nathan, argues that the trial court abused its

discretion in revoking his community supervision.  We affirm.

I.     BACKGROUND

Appellant was indicted for aggravated assault with a punishment enhancement.

As part of an agreement with the State, appellant pleaded guilty to the charged offense,

and the State dropped the punishment enhancement.  The trial court deferred a finding

of guilt and placed appellant on community supervision for four years.  Thereafter, the

State filed a motion to revoke appellant's community supervision, alleging numerous violations, including: (1) failing to pay court-ordered probation fees and court costs; (2) testing positive for cocaine; (3) tampering with a urine sample; and (4) failing to find suitable employment.

On August 8, 2012, the trial court conducted a hearing on the State's motion to revoke. At the conclusion of the hearing, the trial court: (1) found all of the allegations contained in the State's motion to revoke to be true, except for the allegation relating to finding suitable employment; (2) revoked appellant's community supervision; (3) found him guilty of the underlying offense; and (4) sentenced him to sixteen years' incarceration in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

## II. STANDARD OF REVIEW

We review an order revoking community supervision under an abuse-of-discretion standard. *See Rickels v. State*, 202 S.W.3d 759, 763-64 (Tex. Crim. App. 2006). To justify revocation, the State must prove by a preponderance of the evidence that the defendant violated the terms and conditions of community supervision. *See Hacker v. State*, 389 S.W.3d 860, 864-65 (Tex. Crim. App. 2013). "In the probation-revocation context, 'a preponderance of the evidence' means 'that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation.'" *Id.* at 865 (quoting *Rickels*, 202 S.W.3d at 764). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their

testimony; thus, we review the evidence in the light most favorable to the trial court's ruling. *See id.* at 865.

If the State fails to produce a preponderance of the evidence to support revocation, the trial court abuses its discretion. *See Cardona v. State*, 665 S.W.2d 492, 493-94 (Tex. Crim. App. 1984). However, proof by a preponderance of any one alleged violation is sufficient to affirm an order revoking community supervision and adjudicating guilt. *See Bryant v. State*, 391 S.W.3d 86, 93 (Tex. Crim. App. 2012); *Clay v. State*, 361 S.W.3d 762, 765 (Tex. App.—Fort Worth 2012, no pet.).

### III.   ANALYSIS

In his sole issue on appeal, appellant contends that the trial court abused its discretion in revoking his community supervision because the State did not prove by a preponderance of the evidence that he had violated the terms and conditions of his community supervision. Appellant also argues that the trial court abused its discretion in sentencing him.

At the August 8, 2012 adjudication hearing, Justin Bryan, an officer with the Navarro County Adult Community Supervision and Corrections Department, testified that appellant failed to pay his probation fees and court costs, failed to maintain stable employment, tested positive for cocaine on May 11, 2012, and tried to tamper with a urine screen on May 11, 2012. According to Bryan, appellant stated that he received $606 per month in disability and that he could make the required payments for his community supervision and court costs. Bryan testified that appellant owed more than

$400 for his community supervision and more than $60 in court costs. Bryan then recalled an incident regarding the drug testing of appellant.

On May 11, 2012, appellant was requested to supply a urine sample. Appellant told Bryan that he could not provide a sample at 11:00 a.m., so Bryan allowed appellant to come back at 1:00 p.m. to provide the sample. When he returned at 1:00 p.m. to provide the sample, appellant engaged in suspicious behavior. Bryan recounted that, while providing the sample, appellant coughed loudly, gasped, and turned his back to obstruct Bryan's view. Based on the obstruction, Bryan twice requested that appellant pull down his pants to ensure that nothing was being concealed. Appellant became agitated and "threw his arms up and when he threw his arms up[,] I noticed that there was a wet spot on his shorts, and a condom fell from his shorts to the floor underneath him." Bryan noticed that the condom still had some urine in it. Based on his training and experience, which included the administration of at least 1,000 or 2,000 drug tests, Bryan believed that appellant was trying to tamper with the urine sample.

Nevertheless, the cup provided for the sample contained some urine. Bryan field-tested the fluid in the cup, and the fluid tested positive for cocaine. Bryan then confronted appellant about the tampering. Appellant denied having cocaine in his system, but he did admit that the condom was his and that he had brought the condom to use for his urine sample. Bryan told appellant that he could either supply another urine sample or be charged with a new offense. Appellant agreed to provide a new sample that ultimately tested positive for cocaine.

Based on appellant's failure to pay his court-ordered costs and fees, appellant's tampering with the drug test, and appellant's positive drug test, Bryan believed that appellant's community supervision should be revoked.

Appellant and his wife also testified. In particular, appellant noted that he used to receive $608 a month but now receives $628 a month in disability, that his church helps him out with some of his bills, that he receives food stamps, and that his wife receives $400 a month in disability. Appellant denied being able to use his disability money to pay the court-ordered costs in this case, but he did admit to receiving a debit card from the Social Security Administration and being able to withdraw cash using that card. Appellant also admitted to borrowing money from his sister and father and to telling Bryan that he would pay his court-ordered fees; however, he acknowledged that he never told Bryan that he was unable to pay the fees. With regard to the May 11, 2012 incident, appellant asserted that Bryan was lying and that he did not try to tamper with the drug test.

By revoking appellant's community supervision, the trial court clearly believed Bryan's testimony over appellant's, which it was entitled to do. *See Hacker*, 389 S.W.3d at 865; *see also Lozano v. State*, No. 03-07-00597-CR, 2008 Tex. App. LEXIS 6212, at **4-5 (Tex. App.—Austin Aug. 14, 2008, no pet.) (mem. op., not designated for publication) (recognizing that the trial court may disbelieve or not accept appellant's excuses for failing to comply with community-supervision conditions). Moreover, with evidentiary-sufficiency challenges such as this, we are to defer to the trial court's resolution of conflicting testimony. *See Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim.

App. 2008); *Mauney v. State*, 107 S.W.3d 693, 695 (Tex. App.—Austin 2003, no pet.); *see also Munoz v. State*, Nos. 11-12-00137-CR, 11-12-00138-CR, 11-12-00139-CR, 11-12-00140-CR, 2013 Tex. App. LEXIS 4645, at *7 (Tex. App.—Eastland Apr. 11, 2013, no pet. h.) (mem. op., not designated for publication) ("We must consider the facts in the light most favorable to the trial court's ruling and defer to the trial court's resolution of disputed testimony."). Therefore, viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the record contains sufficient evidence to demonstrate by a preponderance of the evidence that appellant violated his community supervision. *See Hacker*, 389 S.W.3d at 864-65. Accordingly, we cannot say that the trial court abused its discretion in revoking appellant's community supervision. *See Rickels*, 202 S.W.3d at 763-64.

In any event, the second part of appellant's issue, which could be considered multifarious, attacks the sentence imposed by the trial court—sixteen years' incarceration. "Generally, punishment assessed within the statutory limits is not excessive, cruel, or unusual punishment." *Dale v. State*, 170 S.W.3d 797, 799 (Tex. App.—Fort Worth 2005, no pet.) (citing *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1979); *Alvarez v. State*, 63 S.W.3d 578, 580 (Tex. App.—Fort Worth 2001, no pet.)). The record reflects that appellant was charged with aggravated assault, a second-degree felony, in the underlying offense. *See* TEX. PENAL CODE ANN. § 22.02(a)-(b) (West 2011). Section 12.33 of the Texas Penal Code provides that the punishment range for a second-degree felony is "for any term of not more than 20 years or less than 2 years." *Id.* §

12.33(a) (West 2011). Therefore, appellant's sixteen-year sentence falls within the punishment range proscribed by section 12.33. *See id.*

Furthermore, we note that appellant has cast this complaint in terms of an abuse of discretion. This Court has stated:

> Typically challenges to the proportionality of the length of a sentence are raised as a violation of the Eighth Amendment's ban on "cruel and unusual punishment." Although such claims are seldom successful, there is an established body of case law which provides a framework for analyzing such an Eighth Amendment claim.
>
> Appellant has, instead, cast his issue in terms of an "abuse of discretion." He has not cited any cases where an appellate court has reviewed the length of an otherwise lawful sentence and determined that the court abused its discretion by imposing such a sentence. Indeed, the only case he cites is *Jackson v. State*, 680 S.W.2d 809 (Tex. Crim. App. 1984). *Jackson* involves a court's abuse of discretion in the procedure employed at the sentencing phase; it has nothing to do with the actual sentence and, therefore, no applicability to this case.

*Shelburg v. State*, No. No. 10-09-00172-CR, 2011 Tex. App. LEXIS 3228, at **3-4 (Tex. App.—Waco Apr. 27, 2011, no pet.) (mem. op., not designated for publication) (internal citations omitted).

Likewise, in the instant case, appellant invokes *Jackson* while arguing that the trial court abused its discretion in assessing the sixteen-year sentence. Because we do not find *Jackson* to be applicable in this case, and because the imposed sentence is within the punishment range proscribed for second-degree felonies, we cannot say that the trial court abused its discretion. See *id*. We therefore overrule appellant's sole issue on appeal.

## IV. CONCLUSION

Having overruled appellant's sole issue on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed June 20, 2013
Do not publish
[CR25]